PETER L. CARR, IV (#256104)
PCARR@THEPLCLAWGROUP.COM
NA'SHAUN L. NEAL (#284280)
NNEAL@THEPLCLAWGROUP.COM
**PLC LAW GROUP, APC**
3756 SANTA ROSALIA DR., SUITE 326
LOS ANGELES, CA 90008
TELEPHONE: (310) 400-5890
FACSIMILE:  (310) 400-5895

ATTORNEYS FOR PLAINTIFFS,
CYNTHIA MARTINEZ, RUDY ALEXANDER MARTINEZ,
JOHN DOE, JANE DOE and RAUL MARTINEZ

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA MARTINEZ, RAUL MARTINEZ, RUDY ALEXANDER MARTINEZ, JANE DOE, a minor, and JOHN DOE, a minor<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF LOS ANGELES; DEPUTY MELVIN CASTRO (#516511); DEPUTY JOSE HURTADO (#552712); DEPUTY QUINN ALKONIS (#623539); SGT. GREGORY BERG (#470638); and DOES 1 through 10 inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## Introduction

1. This case challenges the abuse of discretion, excessive force, and coercive acts that deprived the Plaintiffs CYNTHIA MARTINEZ, RUDY ALEXANDER MARTINEZ, JOHN DOE, JANE DOE and RAUL MARTINEZ of their federal and state rights and complain of Defendants COUNTY OF LOS ANGELES, DEPUTY MELVIN CASTRO (#516511), DEPUTY JOSE HURTADO (#552712), DEPUTY

-1-
COMPLAINT

QUINN ALKONIS (#623539), SGT. GREGORY BERG (#470638), and DOES 1 through 10, inclusive, as follows:

**VENUE AND JURISDICTION**

2. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1334, and arises under 42 U.S.C. §§ 1983 and 1988. State law claims for relief are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the City of Santa Monica, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

**PARTIES**

3. At all relevant times herein, Plaintiff CYNTHIA MARTINEZ (hereinafter "CYNTHIA") was and is a resident of the State of California in the County of Los Angeles.

4. At all relevant times herein, Plaintiff RAUL MARTINEZ (hereinafter "RAUL") was and is a resident of the State of California in the County of Los Angeles.

5. At all relevant times herein, Plaintiff RUDY ALEXANDER MARTINEZ (hereinafter "RUDY") was and is a resident of the State of California in the County of Los Angeles. This lawsuit is brought on his behalf by CYNTHIA MARTINEZ as his guardian ad litem because of his mentally disabled status.

6. At all relevant times herein, Plaintiff JOHN DOE (hereinafter "JOHN DOE") was and is a resident of the State of California in the County of Los Angeles and is the biological son of CYNTHIA MARTINEZ and RAUL MARTINEZ. This lawsuit is brought on his behalf by CYNTHIA MARTINEZ as his guardian ad litem because he is a minor.

7. At all relevant times herein, Plaintiff JANE DOE (hereinafter "JANE DOE") was and is a resident of the State of California in the County of Los Angeles and is the biological daughter of CYNTHIA MARTINEZ and RAUL MARTINEZ. This

–2–
COMPLAINT



lawsuit is brought on his behalf by CYNTHIA MARTINEZ as his guardian ad litem because she is a minor.

8.     Defendant COUNTY OF LOS ANGELES (hereinafter referred to as "COLA") is, and at all times in this complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COLA possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the COUNTY OF LOS ANGELES' SHERIFF'S DEPARTMENT (hereinafter referred to as "LASD") and its tactics, methods, practices, customs and usages.

9.     Defendant DEPUTY MELVIN CASTRO (#516511) (hereinafter "DEPUTY CASTRO") is, and at all times in this complaint was, an individual employed by LASD and/or its subsidiaries as a sheriff deputy, acting within the course and scope of his employment and also within his actual and apparent authority as a sheriff deputy of a public entity, LASD.

10.     Defendant DEPUTY JOSE HURTADO (#552712) (hereinafter "DEPUTY HURTADO") is, and at all times in this complaint was, an individual employed by LASD and/or its subsidiaries as a sheriff deputy, acting within the course and scope of his employment and also within his actual and apparent authority as a sheriff deputy of a public entity, LASD.

11.     Defendant DEPUTY QUINN ALKONIS (#623539) (hereinafter "DEPUTY ALKONIS") is, and at all times in this complaint was, an individual employed by LASD and/or its subsidiaries as a sheriff deputy, acting within the course and scope of his employment and also within his actual and apparent authority as a sheriff deputy of a public entity, LASD.

12.     Defendant SERGEANT GREGORY BERG (#470638) (hereinafter "SGT. BERG") is, and at all times in this complaint was, an individual employed by LASD and/or its subsidiaries as a sheriff deputy, acting within the course and scope of his


LAW GROUP, APC

employment and also within his actual and apparent authority as a sheriff deputy of a public entity, LASD.

13.    At all relevant times mentioned herein and material hereto, the Defendant DOE DEPUTIES described below engaged in law enforcement as police officers, sergeants, captains, lieutenants, and/or civilian employees, agents and representatives of Defendant COLA, duly employed as sheriff deputies by the LASD, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

14.    PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to PLAINTIFF who, therefore, sues said Defendants by such fictitious names. PLAINTIFF will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

15.    Defendants, and each of them, acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

### FACTS COMMON TO ALL COUNTS

16.    On or about December 20, 2018, Claimants CYTNHIA MARTINEZ, RAUL MARTINEZ, JANE DOE, JOHN DOE and RUDY ALEXANDER MARTINEZ were at their residence located in the city of Carson.

17.    Plaintiff CYNTHIA called 911 for assistance with her son, RUDY. CYNTHIA explained to the dispatcher that her son was autistic and was experiencing a mental health breakdown and that he was unarmed.  She also explained to the dispatcher that RUDY might have bipolar syndrome.

18.    Despite being informed that RUDY was autistic and experiencing a mental



breakdown, DEPUTY CASTRO, DEPUTY HURTADO, DEPUTY ALKONIS and SGT. BERG (collectively "NAMED DEPUTIES") arrived at Claimants' residence, negligently assessed the circumstances presented to them and violently confronted RUDY.

19.    As the NAMED DEPUTIES arrived to Plaintiffs' home, CYNTHIA met them in the alley in front of the garage.  CYNTHIA reiterated to the NAMED DEPUTIES that RUDY had a mental disability and that he needed their help.  RUDY was standing by himself at the opening of the garage with nothing in his hands which were to his side.

20.    DEPUTY CASTRO grabbed CYNTHIA by the arms and shoved her out the way and approached RUDY. DEPUTY HURTADO and DEPUTY ALKONIS drew their weapons and pointed them at RUDY upon approaching him.

21.    Without reasonable suspicion or probable cause to believe that RUDY was armed or presented a threat to the NAMED DEPUTIES, the family members or the general public, DEPUTY HURTADO grabbed RUDY from behind and DEPUTY CASTRO punched RUDY in the face.

22.    Without warning, DEPUTY CASTRO, DEPUTY HURTADO and DEPUTY ALKONIS violently threw RUDY to the floor struck him multiple times on his head with a baton in addition to tazing him several times.

23.    Without a warrant or probable cause to believe that a weapon was involved in the call, the NAMED DEPUTIES and DOE DEPUTIES illegally searched and ransacked the premises under the pretense of searching for a gun.  When the NAMED DEPUTIES and DOE DEPUTIES realized that the family was videotaping the beating and illegal search, DOE DEPUTIES confiscated the phones of the witnesses.

24.    Because CYTNHIA and RAUL MARTINEZ protested the beating of their son and illegal search and destruction of their home, the NAMED DEPUTIES arrested them along with their son, RUDY, and charged each with resisting arrest.

25.    With knowledge that their reports would be used by the Los Angeles County



District Attorney's ("DA") office when deciding to bring criminal charges against claimants, the deputies then made false statements in their reports to cover the fact that they violated claimants' rights by using excessive force, unlawfully searching the premises and unlawfully arresting claimants. Specifically, the following false statements were made:

     a.    DEPUTY ALKONIS stated that he saw RUDY "clench his fists, balling them up, while puffing his chest out, as if he was preparing to fight." He further stated that he saw RUDY lunge at DEPUTY CASTRO prior to seeing DEPUTY CASTRO punch RUDY.

     b.    DEPUTY HURTADO stated that CYNTHIA pushed DEPUTY CASTRO and grabbed his shirt to keep him from detaining RUDY. She further stated that she observed RUDY run towards DEPUTY CASTRO with his fist clinched and in a fighting stance prior to seeing CASTRO punch RUDY.

     c.    DEPUTY CASTRO stated that he saw RUDY walk aggressively towards him with clenched fists. He then saw RUDY raise his arms upward and square his upper body as if he was assuming a fighting stance prior to punching RUDY.

26.    Additionally, DOE DEPUTIES threatened JOHN DOE, a minor, with an arrest if he did not unlock his father's, claimant RAUL MARTINEZ, cell phone. Under threat of arrest, JOHN DOE gave the DOE OFFICERS the passcode to his father's phone. After unlawfully arresting CYNTHIA and RAUL MARTINEZ, DOE OFFICERS called Child Protective Services and had minors JANE DOE and JOHN DOE forcibly separated from their parents. Due to the DOE OFFICERS false report, JANE DOE and JOHN DOE were separated from their parents for approximately 3 days.

27.    RUDY was incarcerated for nearly a year prior to being released on bail. As of the filing of this lawsuit, he was still fighting the charges made against him.

28.    On information and belief, at no point during the incident was a Mental Health

Evaluation Team ("MET") called.

### *Facts Regarding Defendant COLA's Awareness of an Ongoing Mental Health Crisis*

29.   COLA has known that its deputies were encountering large numbers of mentally ill persons in the field since 1991.  In Los Angeles County in 2014, nearly 30% of the incidents where sheriff's deputies used physical force while on patrol involved someone with a mental illness.  By 2014, the number of 911 calls involving mentally ill people in sheriff's territory surged by 55% since 2010.

30.   In May of 2014, a Countywide Mental Health Summit was convened and a consultant group was hired to assess then-existing mental health resources in the County.  As a result of the Summit, it was determined that COLA's deputies were not prepared to properly engage with the mentally ill.

31.   In respects to engaging with the mentally ill in the field, COLA only required eight hours of training for its deputies, which consisted of 6 hours of 720 hours in the basic academy and 2 hours of 40 hours in patrol school.   The consultants recommended that COLA increase the hours of mental health training of its deputies in the field from 8 hours to 32 hours so that deputies would be better suited to work with the mentally ill population.  COLA accepted the recommendation and gave itself 6 years to train its deputies.  Likewise, POST mandates increased the mental health training hours from 6 to 15 hours in 2016 and an additional 8 hours for Field Training Officers.

32.   In August of 2016, the County also created Field Operations Directive ("FOD") 16-003 establishing "the policy and procedures for responding and handling calls for service involving persons who may be mentally ill while minimizing use of force incidents." ("FOD 16-003").  It also indicates that a MET should be called when making contact with a person with mental health problems.

33.   Additionally, it set the policy for accommodating the mentally ill when they come in contact with them when they believe that they are a danger to themselves and



others.  A Field Operations Directive is an enactment of department policy that applies to patrol divisions.

34.    On May 17, 2017, LASD Sheriff James P. McDonnell admitted that deputies have a lack of training in responding to persons with mental health problems.

## FIRST CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS - EXCESSIVE FORCE - 42 U.S.C. § 1983

## (Plaintiffs CYNTHIA MARTINEZ and RUDY ALEXANDER MARTINEZ against DEPUTY MELVIN CASTRO, DEPUTY JOSE HURTADO, DEPUTY QUINN ALKONIS, SERGEANT GREGORY BERG and DOES 1 through 10, inclusive)

35.    Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

36.    This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

37.    As a result of the above described intentional acts and omissions of the Defendant Deputies, collectively and individually, Plaintiffs' Fourth Amendment constitutional right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

a.    DEPUTY ALKONIS and DEPUTY HURTADO drew their pistols and pointed them at RUDY without reasonable suspicion or probable cause to believe that RUDY had committed a crime or that he was armed.

b.    DEPUTY CASTRO grabbed CYNTHIA by the arm and threw her to the side.

c.    DEPUTY HURTADO grabbed RUDY from behind while DEPUTY CASTRO punched RUDY in the face without reasonable suspicion or probable cause to believe that RUDY had committed a crime.

d.    DEPUTY ALKONIS repeatedly punched RUDY on his head as he was

restrained by DEPUTY HURTADO and SGT. BERG.

38.   The conduct of the NAMED DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages.

39.   As a result of the conduct of NAMED DEPUTIES, they are liable for Plaintiffs' injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.

40.   At no point did PLAINTIFFS pose a reasonable threat of violence or danger to the NAMED DEPUTIES or to any other individual.   PLAINTIFFS made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officer that PLAINTIFFS had the will or ability to inflict substantial bodily harm against any individual.

41.   Additionally, NAMED DEPUTIES acted entirely without probable cause or reasonable suspicion that PLAINTIFFS had committed, was committing, or would commit any crime.

42.   Lastly, at no point during the incident did CYNTHIA show any sign of resisting the NAMED DEPUTIES.

43.   RUDY did not show any sign of resisting until he was unlawfully punched by DEPUTY CASTRO.

44.   Accordingly, Defendant Officers are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

///

///

///



– 9 –
COMPLAINT

**SECOND CAUSE OF ACTION**

**VIOLATION OF CIVIL RIGHTS - FALSE ARREST - 42 U.S.C. § 1983**

**(Plaintiffs CYNTHIA MARTINEZ, RAUL MARTINEZ, JANE DOE and JOHN DOE against DEPUTY MELVIN CASTRO, DEPUTY JOSE HURTADO, DEPUTY QUINN ALKONIS, SERGEANT GREGORY BERG and DOES 1 through 10, inclusive)**

45.    Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

46.    This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

47.    As a result of the above described intentional acts and omissions of the NAMED DEPUTIES, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches and seizures, including the right to be from arrest without probable cause, as applied to state actors by the Fourteenth Amendment, was violated when:

   a.    Plaintiffs CYNTHIA and RAUL were arrested for protesting the beating of their son and illegal search and destruction of their home.

   b.    Plaintiffs JANE DOE AND JOHN DOE were seized by Child Protective Services and displaced from their families for multiple days.

48.    The conduct of the NAMED DEPUTIES was willful, wanton, malicious and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

49.    As a result of the conduct of NAMED DEPUTIES, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.

50.    Plaintiffs CYNTHIA and RAUL were arrested without a warrant, probable cause, or reasonable suspicion.

51.     Plaintiffs JANE DOE and JOHN DOE were seized as a result of the unlawful arrest of their parents CYNTHIA and RAUL.

52.     Accordingly, NAMED DEPUTIES are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

### THIRD CAUSE OF ACTION

### NEGLIGENCE - Cal. Govt. Code §§ 815.2(a), 820(a)

**(Plaintiffs CYNTHIA MARTINEZ, RUDY ALEXANDER MARTINEZ, RAUL MARTINEZ, JOHN DOE and JANE DOE against DEPUTY MELVIN CASTRO, DEPUTY JOSE HURTADO, DEPUTY QUINN ALKONIS, SERGEANT GREGORY BERG and DOES 1 through 10, inclusive)**

53.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

54.     Plaintiff is informed and believes and there upon alleges that NAMED DEPUTIES, and each of them, failed to exercise reasonable and ordinary care in committing the acts alleged herein, by actions and inactions which include, but are not limited to:

     a.     negligently detaining and arresting Plaintiffs CYNTHIA and RAUL without probable cause or reasonable suspicion to believe that Plaintiff had or was committing a crime;

     b.     negligently using excessive and unreasonable physical force upon the person of Plaintiffs RUDY and CYNTHIA, when the same was unnecessary and unjustified;

     c.     negligently failing to determine that Plaintiff RUDY posed no threat of physical harm to any person when Plaintiff RUDY was assaulted and battered;

     d.     negligently attacking Plaintiffs RUDY and CYNTHIA as described;

     e.     negligently failing to intercede when fellow Defendant Officers violated Plaintiffs RUDY, CYNTHIA and RAUL's constitutional rights;

---

-11-
COMPLAINT



f.      negligently failing to render timely medical aid to Plaintiff RUDY after he was injured by the NAMED DEPUTIES; and

g.      negligently causing JANE DOE and JOHN DOE to be seized by Child Protective Services and separated from their family for several days.

55.     All of these negligent acts proximately caused severe injuries to PLAINTIFFS, as described herein.

56.     As a result of these acts, PLAINTIFFS were placed in great fear of their lives and physical well-being.  Moreover, due to the negligent acts of each of these NAMED DEPUTIES, PLAINTIFFS have suffered and will continue to suffer serious pain and severe mental anguish.

57.     As a proximate result of the above mentioned conduct of NAMED DEPUTIES, and each of them, PLAINTIFFS have been required to employ and did employ physicians and surgeons to examine, treat, and care for them, and incurred other incidental medical expenses in an amount according to proof at trial.

### FOURTH CAUSE OF ACTION

### ASSAULT AND BATTERY

**(Plaintiffs CYNTHIA MARTINEZ and RUDY ALEXANDER MARTINEZ against DEPUTY MELVIN CASTRO, DEPUTY JOSE HURTADO, DEPUTY QUINN ALKONIS, SERGEANT GREGORY BERG and DOES 1 through 10, inclusive)**

58.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

59.     On December 20, 2018, NAMED DEPUTIES, acting individually and in concert with other law enforcement agents, assaulted and battered Plaintiffs CYNTHIA and RUDY by acts which included, but were not limited to:

a.      DEPUTY ALKONIS and DEPUTY HURTADO drew their pistols and pointed them at RUDY without reasonable suspicion or probable cause to believe that RUDY had committed a crime or that he was armed.

-12-
COMPLAINT



b. DEPUTY CASTRO grabbed CYNTHIA by the arm and threw her to the side.

c. DEPUTY HURTADO grabbed RUDY from behind while DEPUTY CASTRO punched RUDY in the face without reasonable suspicion or probable cause to believe that RUDY had committed a crime.

d. DEPUTY ALKONIS repeatedly punched RUDY on his head as he was restrained by DEPUTY HURTADO and SGT. BERG.

60. In assaulting and battering PLAINTIFFS as described herein, NAMED DEPUTIES proximately caused severe and potentially permanent injuries to CYNTHIA and RUDY.

61. Both prior to and during the time in which they were assaulted and battered, PLAINTIFFS were not armed with any kind of weapon and posed no reasonable threat of violence to the NAMED DEPUTIES, nor to any other individual.

62. When RUDY was attacked, as described herein, he made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that he had the will or ability to inflict substantial bodily harm against any individual prior to being attacked.

63. As a result of the above alleged conduct, RUDY suffered serious bodily harm including, but not limited to, injuries to his head, as well as severe back, neck and shoulder pain. As a result of these acts, RUDY was placed in great fear of his life and physical well-being.

64. Moreover, due to the wrongful, intentional, and malicious acts of the NAMED DEPUTIES, PLAINTIFFS have suffered and will continue to suffer extreme severe mental anguish.

65. As a proximate result of the aforementioned conduct of NAMED DEPUTIES, and each of them, PLAINTIFFS have been required to employ and did employ physicians to examine, treat and care for them, and incurred other incidental medical expenses in an amount according to proof at trial.



66.     The aforementioned acts and omissions alleged herein were intended by each NAMED DEFENDANTS to cause injury to RUDY and CYNTHIA, and were done with a conscious disregard for the rights and safety of PLAINTIFFS, as the acts and omissions were willful, wanton, malicious and oppressive, thereby justifying the awarding of compensatory and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

## FIFTH CAUSE OF ACTION

## MUNICIPAL LIABILITY FOR UNLAWFUL CUSTOM AND PRACTICE - 42 U.S.C. § 1983

## (Plaintiffs CYNTHIA MARTINEZ, RAUL MARTINEZ and RUDY ALEXANDER MARTINEZ, JANE DOE and JOHN DOE against COUNTY OF LOS ANGELES and DOES 1 through 10, inclusive)

67.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

68.     Defendant COLA is and at all times herein mentioned, has been a public entity duly authorized and existing as such in and under the laws of the State of California. At all times herein mentioned, Defendant COLA possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LASD officers and their tactics, methods, practices, customs and usages.

69.     At all times herein mentioned, NAMED DEPUTIES and each of them, were employees acting under the direction and control of the LASD, who knowingly and intentionally promulgated, maintained, applied, and enforced the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments to the United States Constitution. Such customs, policies, practices and usages at all times herein mentioned, required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, dishonesty, and numerous other serious abuses of their powers as peace deputies employed by the LASD.

70. The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant COLA include, but are not limited to:

a. Defendant COLA had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, dishonesty and improper tactics, and corruption by LASD employees, including the individual NAMED DEPUTIES herein, and refused, with deliberate indifference, to enforce established administrative procedures to ensure public safety, protection of citizens' rights and the PLAINTIFFS' liberty interests;

b. Defendant COLA refused to adequately discipline individual employees found to have committed similar acts of dishonesty and misconduct;

c. Defendant COLA refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by LASD employees;

d. Defendant COLA failed to adequately supervise the actions of employees under its control;

e. Defendant COLA failed to adequately train its officers so as to avoid constitutional violations;

f. Defendant COLA condoned and participated in the practice of prosecuting groundless criminal charges for the purpose of insulating COSM employees from civil liability and reducing or dismissing criminal charges against individuals in return for releasing them from civil liability;

g. Defendant COLA tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

h. Defendant COLA tacitly condones and encourages use of excessive force on citizens;

i. Defendant COLA fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by December 20, 2018, and



thereafter, represented the unconstitutional policies, practices and customs of the COLA.

71.     The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendant COLA:

a.     False Report and Unreasonable Force.  On or about July 17, 2007, Deputy Christian Chamness claimed Raymond Davison blocked deputies as they tried to leave a barbershop where they had arrested Davison's son and another man.  Deputy Chamness made false statements in his arrest report stating that Mr. Davison advanced on him causing him to pepper spray him. He arrested Mr. Davison for PC 148 resisting or delaying a peace officer to which the Los Angeles County District Attorney's office charged him.  Charges against Mr. Davison were only dropped after video evidence recorded by a security camera contradicted Deputy Chamness' account.  Mr. Davison filed a civil suit and settled with the COLA for $195,000.  While Deputy Chamness was suspended for 25 days as a result of his conduct, he was assigned to the Hall of Records in August of 2017 and paid $205,239 in annual salary, including overtime, other earnings and benefits as of 2018.

b.     False Report and Unreasonable Force.  On or about January 4, 2017, Bryan Joshua Cook was sitting in the living room of his residence located in San Dimas, California when the Defendant deputies entered his home and unjustifiably tased him.  Allegedly, Mr. Cook and his wife had been arguing earlier in the day and Mr. Cook's father-in-law called 911 because he did not like the fact that they were arguing.  As the Deputies walked through Mr. Cook's home, Mr. Cook was sitting on his couch drinking water and no crime was in progress nor did the officers observe any sign of a physical altercation or weapons.  After seeing the deputies in his home, Mr. Cook immediately asked the deputies if they had a warrant and repetitively requested the deputies leave his home. At some point, Deputy Dondanville informed Mr. Cook that



-16-

COMPLAINT

he wanted search him for weapons. Mr. Cook responded, "Do not to touch me." Then, Mr. Cook stood up from his seated position and Deputy Dondanville tased him without warning or legal justification. Deputy Dondaville falsely arrested Mr. Cook for resisting, delaying or obstructing a public officer in violation of Penal Code Section 148(a)(1). This charge was ultimately dismissed and Mr. Cook filed a civil action that is pending.

c.     False Report and Unreasonable Force. On October 13, 2013, Nolan Hillis, a 26-year-old developmentally challenged male who suffered from an intellectual disability and seizure disorders, was tased and unlawfully arrested by LASD Deputies Sahinbas and Ajufoh while waiting for a bus to arrive at a Metro Station in Los Angeles, CA. The deputies each wrote arrest reports indicating that Mr. Hillis became angered and approached Deputy Sahinbas in an aggressive manner when Deputy Sahinbas requested proof of fare. However, video evidence showed differently. The video shows Deputy Ajufoh drawing and pointing his service weapon at Mr. Hillis while Deputy Sahinbas pushes Mr. Hillis. Without warning, Deputy Sahinbas then drew his taser and tased Mr. Hillis causing him to fall down a flight of stairs. Mr. Hillis was arrested for battery on a peace officer PC 243(b). The criminal case was dismissed against Mr. Hillis and Deputy Sahinbas' supervisor discussed with him how different methods could have been used to avoid the confrontation.

72.    In respects to making contact with individuals with mental disabilities, COLA had actual notice that its deputies were ill prepared in respects to interacting with the mentally ill, which lead to the unnecessary use deadly and other physical force against the mentally ill. Despite this knowledge, the County 1) failed to properly fund the MET program and, separately, and 2) failed to train its deputies on new procedures on making contact with the mentally ill.

73.    COLA was deliberately indifferent to the needs of persons experiencing mental health crisis because they properly fund the MET program.

a.       COLA knew that the Sherriff's Department experienced funding shortages related to mental health responders as of March 7, 2017.

b.       COLA acknowledged the funding shortages related to mental health responders as of March 7, 2017.

c.       As early as January 11, 2017, COLA voted to expand the number of employees assigned to the department's Mental Evaluation Teams so they can respond 24 hours a day, seven days of week because the department has struggled to deploy mental health responders due to funding and staff shortages.

74.    COLA was deliberately indifferent to the needs of persons experiencing mental health crisis because they did not train its deputies on how to respond.

a.       As early as 1991, LASD knew that deputies were encountering a large number of mentally ill persons.

b.       In 2014, due to realization that the deputies had little to no training in mental health treatment and were encountering large numbers of mentally ill persons, LASD increased the number of training hours in mental health for patrol deputies from 8 hours to 32 hours. However, LASD gave itself 6 years to train its deputies on its policies.

c.       In addition, in August of 2016, LASD published FOD 16-003 "Calls For Service Involving Alleged Mentally Ill Persons" to their intranet for deputies to download and review.

d.       LASD also knew that failure to follow the policy and procedures listed in FOD 16-003 could lead to unnecessary use of force incidents.

75.    The decisions of the NAMED DEPUTIES to brutally assault and unlawfully arrest RUDY, CYNTHIA and RAUL for no conceivably valid reason represents a larger systemic issue of predatory policing and a culture among LASD that encourages violence.

76.    By reason of the aforesaid policies, customs, practices and usages, PLAINTIFFS' rights under the Fourth and Fourteenth Amendments of the United



-18-
COMPLAINT

States Constitution were violated.

77.     On information and belief, not one of the NAMED DEPUTIES involved in the aforementioned incident have been reprimanded or sanctioned by Defendant COLA or LASD for their actions against PLAINTIFFS.

78.     On information and belief, not one of the NAMED DEPUTIES had the requisite hours that LASD required for mental health patrol deputies.

79.     On information and belief, the extreme escalation of a verbal command into a violent arrest was ratified by Defendant COLA and LASD by failing to discipline any officer involved or modify training to address this type of situation in the future.

80.     Defendant COLA has acted with deliberate indifference to PLAINTIFFS' constitutional rights. As a proximate result of these acts, PLAINTIFFS' constitutional rights have been violated, causing him to suffer physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

81.     Plaintiff also seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

### SIXTH CAUSE OF ACTION

### VIOLATION OF THE BANE ACT - Cal. Civil Code §§ 52 and 52.1

### (All Plaintiffs Against All Defendants and DOES 1 through 10, inclusive)

82.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

83.     As alleged herein, Defendants interfered with PLAINTIFFS' rights under state and federal laws and under the state and federal constitution including, without limitation, the right to be free from unreasonable search and seizure, the right to due process, and the right to bodily integrity, including his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and his rights under Article 1, Sections 1, 7 and/or 13 of the California Constitution.

84.     The Eighth Amendment to the United States Constitution and Article I of the California Constitution guarantee the right of persons to be free from cruel and unusual punishment.   Defendants, by engaging in deliberate indifference to



-19-
COMPLAINT

PLAINTIFFS' right to be free from unreasonable search and seizure interfered with PLAINTIFFS' enjoyment of their rights under federal and California law, thus giving rise to claims for damages pursuant to California Civil Code § 52.1.

85. As a result of their conduct, Defendants are liable for PLAINTIFFS' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

86. As a direct and proximate result of the aforementioned wrongful acts of Defendants, individually and as peace officers, PLAINTIFFS sustained and incurred damages for physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, embarrassment, as well as harm to his reputation in the community.

87. The conduct of NAMED DEPUTIES, individually and as peace officers, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of PLAINTIFFS, entitling PLAINTIFFS to an award of exemplary and punitive damages. PLAINTIFFS do not seek punitive damages against the COLA.

88. PLAINTIFFS seek statutory damages under California Civil Code §52, as well as compensatory and punitive damages according to proof.

**SEVENTH CAUSE OF ACTION**

**MALICIOUS PROSECUTION - 42 U.S.C. § 1983**

**(Plaintiffs CYNTHIA MARTINEZ and RAUL MARTINEZ Against All**

**Defendants and DOES 1 through 10, inclusive)**

89. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

90. NAMED DEPUTIES and DOES 1-10, while acting under color of law, deprived PLAINTIFFS of their civil rights, more particularly, their right to be free from malicious prosecution.

91. The NAMED DEPUTIES contributed to, caused, or initiated a criminal prosecution against PLAINTIFFS with malice and/or with the purpose of depriving them of their constitutional rights. They did not have probable cause to arrest or

prosecute them, and initiated prosecution for the purpose of evading civil liability. The prosecution ultimately terminated in CYNTHIA and RAUL's favor, with a dismissal of charges. Defendants knew or should have known the initial detention and subsequent arrest of CYNTHIA and RAUL lacked reasonable suspicion or probable cause, and that CYNTHIA and RAUL were innocent.

92.    PLAINTIFFS bring this action under federal law. The constitutional source against malicious prosecution is primarily the due process clause of the Fourteenth Amendment, and PLAINTIFFS' due process rights were violated by the conduct alleged herein. PLAINTIFFS bring this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of PLAINTIFFS' right to be free from malicious prosecution is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

93.    NAMED DEPUTIES and DOES 1-10 were each jointly and severally responsible not to bring a malicious prosecution against PLAINTIFFS. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

94.    The conduct of NAMED DEPUTIES and DOES 1-10 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of PLAINTIFFS and therefore warrants the imposition of exemplary and punitive damages.

95.    PLAINTIFFS bring this claim individually and seeks general and special damages, in an amount to be determined at trial. PLAINTIFFS also seek reasonable costs and attorney's fees under 42 U.S.C. § 1988.

**PRAYER**

WHEREFORE, PLAINTIFFS request entry of judgment in their favor and against Defendants as follows:



-21-
COMPLAINT

1.     For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;

2.     For special damages according to proof;

3.     For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;

4.     For prejudgment interest;

5.     For attorney's fees pursuant to 42 U.S.C. § 1983 & California Civil Code § 52.1 (h);

6.     For reasonable costs of this suit incurred herein;

7.     For such other and further relief as the Court may deem just, proper and appropriate.


Dated: February 1, 2020                    **PLC LAW GROUP, APC**


                                           */s/Peter L. Carr IV*
                                           _____
                                           Peter L. Carr, IV
                                           Na'Shaun L. Neal
                                           CYNTHIA MARTINEZ, RUDY ALEXANDER
                                           MARTINEZ, JOHN DOE, JANE DOE and RAUL
                                           MARTINEZ

///

///

///



-22-
COMPLAINT

## <u>DEMAND FOR JURY TRIAL</u>

PLAINTIFF hereby respectfully demands a trial by jury on all issues and claims.

Dated: February 1, 2020           **PLC LAW GROUP, APC**


*/s/Peter L. Carr IV*
_____
Peter L. Carr, IV
Na'Shaun L. Neal
CYNTHIA MARTINEZ, RUDY ALEXANDER
MARTINEZ, JOHN DOE, JANE DOE and RAUL
MARTINEZ



COMPLAINT